<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JACKSON HEWITT INC., | : | |
| Plaintiff, | : | Civil Action No. 14-6931 |
| v. | : | OPINION |
| DAVID G. CLINE, | : | |
| *Defendant*. | : | |

**ARLEO**, UNITED STATES DISTRICT JUDGE.

**THIS MATTER** comes before the Court upon the Motion of Plaintiff Jackson Hewitt, Inc. ("Plaintiff") for a preliminary injunction enjoining Defendant David G. Cline ("Defendant" or "Cline") from activities in violation of the post-termination obligations imposed by several franchise agreements between the parties. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After reviewing the submissions of the parties, and for the reasons set forth below, Plaintiff's application for preliminary injunction is **GRANTED**.

**I.     BACKGROUND**

Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business located in Parsippany, New Jersey. Dkt. No. 1, Compl. ¶ 1. Defendant David Cline is a citizen and resident of the State of Arizona, and former Jackson Hewitt franchisee and guarantor of his obligations under the franchise agreements between himself and Jackson Hewitt. Id. ¶ 2. Jackson Hewitt and Cline entered into four franchise agreements for the license and operation of income tax preparation businesses within defined geographic territories in Arizona and California. Id. ¶¶

1

19-40; Dkt. No. 9-2, Declaration of James S. Coons, dated March 6, 2015 ("Coons Decl.") at Exs. 1-4)). By letter dated June 10, 2014, Jackson Hewitt sent Cline a letter informing him that he was in default of the franchise agreements for failing to pay his financial obligations in accordance with the terms of the agreement. Dkt. No. 1, Compl. ¶ 48. The Notice of Default also informed Cline that he must cure any defaults by June 20, 2014 or Jackson Hewitt may terminate the agreements. Id. ¶ 49. By letter dated August 25, 2014, Jackson Hewitt sent Cline a letter informing him that he was still in default, and advised Cline that Jackson Hewitt was terminating the franchise agreements effective immediately. Id. ¶ 50.

On November 5, 2014, Jackson Hewitt filed a Complaint in this Court for various breaches of the franchise agreements. Dkt. No. 1. On March 6, 2015, Jackson Hewitt filed an Order to Show Cause against Cline. Dkt. No. 9. On March 12, 2015, the Court denied Jackson Hewitt's request for expedited treatment of its Order to Show Cause. Dkt. No. 11. On March 26, 2015, Jackson Hewitt filed the instant Motion seeking a preliminary injunction compelling Defendant to adhere to their post-termination obligations pursuant to the parties' franchise agreements. Dkt. No. 17. Jackson Hewitt seeks: (1) adherence to the two year non-compete provision of the franchise agreements, (2) return to Jackson Hewitt of all client files, (3) return of all trade secret, confidential, and proprietary information, and (4) transfer of all Jackson Hewitt telephone numbers owned by Defendants to Jackson Hewitt, and notification by Defendant to the telephone company that Defendant no longer has the right to use such telephone numbers.

Jackson Hewitt alleges that, despite Cline's contractual obligations, Cline is engaged in operation of competing income tax return preparation businesses under the names "Classic Accounting" and "Abacus Accounting" in at least three of his former franchise territories in Arizona and California, in the same exact locations as his former Jackson Hewitt franchises

locations and using the same employees he used while a Jackson Hewitt franchisee. Dkt. No. 9-9, Declaration of Brandon Chanley, dated March 6, 2015 ("Chanley Dec.") ¶¶ 3-8. In addition, Plaintiff claims that a recent marketing "flyer" obtained by Jackson Hewitt indicated that Cline is currently running advertising directed at clients of Jackson Hewitt, promoting tax preparation services at one of his locations under the "Classic Accounting" name. Id. ¶ 10.[1] Jackson Hewitt also alleges that on March 3, 2015 and March 5, 2015, telephone calls placed to four numbers associated with Cline's former Jackson Hewitt franchised business confirmed that Cline, and/or those acting in concert or participation with him, are operating competing tax preparation businesses at the same addresses that Cline operated as a Jackson Hewitt franchisee, using Jackson Hewitt's client files and telephone numbers, and retaining at least some of the same employees and tax preparers that Cline used while a franchisee. Id. ¶¶ 6-8.

Jackson Hewitt is currently operating in Walmart locations in each of the territories where Cline is allegedly operating competing tax preparation businesses in order to provide services to former Jackson Hewitt customers in those areas and retain the goodwill that had been developed under the brand in those areas. Id. ¶ 11. Jackson Hewitt contends that marketing efforts, including media advertising, local promotional activities, and calls to former customers have already taken place in those territories. Id. Jackson Hewitt alleges that Cline's operations as an "independent" or other competitor in the territories will severely undercut the efforts of Jackson Hewitt to secure business. Plaintiff alleges that its business is being irreparably harmed by Cline's activities in his former franchise territories.

---

[1] The "flyer" says: "ATTENTION WAL-MART CLIENTS the Jackson Hewitt Tax Service in the Walmart is *NOT* the same Jackson Hewitt that did your taxes last year." The flyer directs customers to visit one of the Classic Accounting locations. Chanley Decl. ¶10.

Defendant filed an opposition on April 23, 2015.  Defendant claims that on October 23, 2014, at the termination inspection, he turned over all original Jackson Hewitt client files to Brandon Chanley, Jackson Hewitt Senior Operations Director.  Dkt. No. 20, at 1.  He further claims that all items with any Jackson Hewitt marks or trade secrets have been destroyed, with the exception of exterior signs which was waiting a permit for removal.  Id.   Defendant contends that Classic Accounting, Inc., ceased operations on January 1, 2014, and all assets, including phone numbers were sold at that time.  Id.  Cline claims that he does not own, manage or otherwise direct the tax preparation firms operating in his former locations.  Id.  Defendant does admit, however, that he prepares individual tax returns for people to earn a living, and because Arizona is a Right to Work State, the non-compete provisions are therefore "grievous and an undue hardship."  Id.  Cline also claims that he does not solicit any clients or do any advertising.  Id.

In response, Plaintiff contends that, despite Defendant's claims, Classic Accounting, Inc., remains an active corporation.  According to Plaintiff, a search of the Arizona Corporation Commission website indicates that Classic Accounting, Inc. filed an Annual Report on November 28, 2014 and is an active corporation in Arizona.  Dkt. No. 22-1, Ex. A., 2014 Annual Report.  In that report, Defendant Cline is listed as the Statutory Agent of Classic Accounting, Inc. with Tamara Cline, who Plaintiff's claim is Defendant's wife, listed as President/CEO of Classic Accounting, Inc.  Id.  Plaintiff explains that in an Annual Report filed in 2013 by Classic Accounting, Inc., Cline was listed as the Statutory Agent, President, and CEO.  Dkt. No. 22-3, Ex. C, 2013 Annual Report.  Plaintiff claims that, to the extent Defendant's wife is now running the day-to-day operations of Classic Accounting, the non-compete is broad and encompasses competition by Tamara Cline and all those acting in concert or participation with Defendant. Moreover, Plaintiff explains that the address listed for Classic Accounting in the 2013 and 2014

4

Annual Reports is the same address as one of Defendant's former Jackson Hewitt franchise locations.  Plaintiff contends that this is the same address as contained on the marketing "flyer" directed at clients of Defendant's former Jackson Hewitt franchises, promoting tax preparation services under the Classic Accounting name.

The termination obligations are set forth in Paragraph 20.3 of the franchise agreements. Coons Decl., Exs. 1-4, Dkt. Nos. 9-3 to 9-6.  Pursuant to Paragraph 20.3(h) of the Franchise Agreement, Defendant was obligated to comply with certain post-termination covenants found in Paragraph 18 therein.  Paragraph 18.2 of the Franchise Agreement, in turn, provides that "[f]or a period of two (2) years after the earlier of (1) the effective date of termination for any reason, or (2) expiration of this Agreement, or (3) the date of the sale of the Franchised Business or a majority of its assets, you may not directly or indirectly  prepare or electronically file individual income tax returns, teach tax courses, offer Bank Products or own, engage in. operate, manage, purchase, invest in . . . franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business as defined herein within the Territory or within an area ten (10) miles outside the boundaries of the Territory."  See, e.g., Coons Decl., Exs. 1-4, Dkt. Nos. 9-3 to 9-6, ¶ 18.2.[2]  A "Competing Tax Business" is defined as "any business that offers tax return preparation, electronic filing, Bank Products or other services offered by the Jackson Hewitt Tax Service Operating System."  Id., Definitions.

Pursuant to Paragraph 20.2 of the Franchise Agreements, Jackson Hewitt could terminate the Franchise Agreement for good cause for various reasons including, Defendant's failure to pay any sums due under the Franchise Agreement or any other collateral agreement within five days

---

[2] The territories are defined by postal code.  The number of postal codes differed by agreement, ranging from one postal code to seven.  Compare Coons Decl., Ex. 1, Schedule A with Coons Decl., Ex. 2, Schedule A.

5

after delivery of the notice to cure. Id. ¶ 20.2. In the event of termination of the Franchise Agreements, Paragraph 20.3(a)-(j) require Defendant to comply with the following post-termination obligations, among others: immediately pay all amounts owed under the Franchise Agreement and all Collateral Agreements; return to Jackson Hewitt all originals and copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3; delete all confidential materials and client files from computers and hard drives; comply with the post-termination covenant not to compete contained in paragraph 18 of the Franchise Agreements; notify the telephone company and all listing agencies and advertising directories for the Territories that Defendant no longer has the ruse to use such telephone numbers and listings, and authorizing the transfer of same to Jackson Hewitt. Id. ¶ 20.3.

Paragraph 12.3, in turn, identifies "trade secret, confidential and proprietary materials" as the identities of the customers served by Defendant (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies, customer lists, mailing labels, W–2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers. Id. ¶ 12.3. Pursuant to Paragraph 12.3.2, Defendant acknowledged that "the unauthorized use or disclosure" of such "trade secrets, confidential and proprietary information will cause irreparable injury" and that "damages are not an adequate remedy." Id. ¶ 12.3.2.

## II.  DISCUSSION

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.

2004).³  Having considering Plaintiff's arguments raised in support of the application and Defendant's opposition thereto, the Court finds that Jackson Hewitt has made a sufficient showing to impose the preliminary injunction.

### A. Likelihood of Success

The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation." Bennington Foods LLC v. St. Croix Renaissance, Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008). In evaluating whether a movant has satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975).

Jackson Hewitt has shown a likelihood of success on the merits. It has made a prima facie showing that Defendant is in breach of the Franchise Agreements by operating a competing tax business within at least three of his former Jackson Hewitt franchise territories, in the exact same locations he operated his former Jackson Hewitt franchises businesses, in violation of the covenants not to compete in Paragraph 18 of the Franchise Agreements. Jackson Hewitt has also shown Defendant has also failed to comply fully with his post-termination obligations pursuant to Paragraph 20 of the Franchise Agreements. To the extent Cline is soliciting, or assisting in solicitation of customers, or otherwise using client files and telephone numbers associated with Cline's former Jackson Hewitt franchised businesses, he is violating Paragraphs 12.3, 18, and 20 of the Franchise Agreements.

---

³ Since this Court presently exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. See American Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 180 (3d Cir.1995).

Although Defendant denies certain of Jackson Hewitt's factual allegations, he supplies no evidence in support. Moreover, to prevail on this motion, Jackson Hewitt is not required to prove its case; it need only snow a likelihood, or "reasonable probability," that it will prevail based on its allegations. It has done so here.

### B. Irreparable Harm

The Court likewise finds that Jackson Hewitt has met its burden of demonstrating irreparable harm that will result if restraints are not imposed at this time. Where a party is in possession of another party's confidential information and is poised to use or disclose such information, there is a likelihood of irreparable harm. See, e.g., National Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 162, 530 A.2d 31 (App. Div. 1987) ("Lauria knew trade secrets of National, and . . . under the circumstances there was sufficient likelihood of 'inevitable disclosure,' with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.") (internal citations omitted); Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc., 306 F. App'x. 727, 732 (3d Cir. 2009) (noting that "disclosure of confidential information or trade secrets may constitute irreparable harm") (citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92 (3d Cir. 1992)). This type of irreparable harm flows both from Defendant's failure to return all client files and from Defendant's potential use-or inevitable disclosure-of information contained therein. That such circumstances may constitute irreparable harm is not only recognized by New Jersey law, but was expressly recognized by both parties in agreeing to the terms of the Franchise Agreement. See, e.g., Coons Decl., Exhs 1-4, ¶ 12.3.2. Thus, Jackson Hewitt has succeeded in demonstrating the existence of immediate irreparable harm.

### C.  Balance of Hardships & Public Interest

The Court also finds that Jackson Hewitt has satisfied the remaining two factors—the balancing of hardships and the public interest.  The Court "must 'balance the hardships' to ensure that the injunction does not harm the defendants more than denial of the injunction would harm the plaintiff."  Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d 204, 230 (D.N.J. 2009).  Here, the Court finds that the hardship Jackson Hewitt will suffer outweighs any hardship to Defendant.  The franchise agreement's two-year time restriction and ten-mile geographic restriction with respect to the bounded territories are reasonable.  See Jackson Hewitt Inc. v. Childress, No. 06-909, 2008 WL 199539, at *7 (D.N.J. Jan. 22, 2008) (finding no undue hardship where agreement imposed two-year and ten-mile restrictions) (internal citations omitted).  These limitations do not impose any restrictions on Defendant's ability to engage in his livelihood outside of the geographic area; nor do they prevent him from competing against Jackson Hewitt so long as he does not rely on the benefits derived from his time as a Jackson Hewitt franchisee.  See Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d at 228, 230.  Moreover, Defendant expressly accepted these terms and does not claim that he was somehow unaware of them.  On the other hand, the hardship faced by Jackson Hewitt should Defendant be permitted to retain the client files and potentially utilize such information in competing against Jackson Hewitt is significant.

Lastly, the public interest is not at risk in the instant case.  The public would not be impacted by the inability of the community members in the protected area to have their taxes prepared by Defendant.  Nor does Defendant contend that he is the only tax preparation business in the area.  See Childress, 2008 WL 199539, at *8 (finding no harm to public interest where "[t]here are undoubtedly ample tax return preparation businesses in the area").  Moreover, "the public has an interest in upholding freely negotiated and reasonable business contracts."  Nat'l

9

Reprographics, Inc. v. Strom, 621 F. Supp. 2d at 229.  As such, the public interest is best served by holding Defendant to the reasonable terms of the Franchise Agreement.

### III.   CONCLUSION

For the reasons contained herein, Plaintiff's application for a preliminary injunction is **GRANTED**.  An appropriate order follows this opinion.

**Dated**: October 29, 2015

>  */s Madeline Cox Arleo*
>  **HON. MADELINE COX ARLEO**
>  UNITED STATES DISTRICT JUDGE